**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION**

| | | |
|---|---|---|
| Allied Property and Casualty Insurance Company, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 8:23-cv-3121-TMC |
| | ) | |
| vs. | ) | |
| | ) | |
| Christina M. Kirk, Austin T. Kirk, Hunter E. Lawrence, | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |
| Hunter E. Lawrence, | ) | |
| | ) | |
| Counter Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Allied Property and Casualty Insurance Company, | ) | |
| | ) | |
| Counter Defendant. | ) | |

Allied Property and Casualty Insurance Company ("Allied") filed this declaratory judgment action seeking a declaration of its obligations under a homeowners insurance policy it issued to Christina Kirk. (ECF No. 1). Allied asks the court to declare, among other things, that it has no obligation to defend Christina Kirk and her son Austin Kirk (collectively "the Kirks") in the underlying state court action that arose out of a motor vehicle accident, which resulted in Hunter Lawrence sustaining significant injuries. *Id*. at 11. Lawrence filed a counterclaim against Allied, (ECF No. 16), and Allied and Lawrence filed cross motions for summary judgment, (ECF

Nos. 71, 76). The magistrate judge[1] issued a Report and Recommendation ("Report"), (ECF No. 115), recommending the court grant Allied's motion for summary judgment and declare that Allied has no duty to defend or indemnify the Kirks for any claim arising out of the motor vehicle accident. Lawrence filed objections to the Report. (ECF No. 120). For reasons set forth herein, the court grants summary judgment in favor of Allied.

## BACKGROUND

On September 12, 2020, Lawrence participated in "beer olympics" at the Kirks' residence. (ECF No. 71-3 at 13); Lawrence Dep. Tr. 11:10-25. According to his deposition, Lawrence estimates that, during the party, he, Cody Taylor, and Marshall Henderson[2] each drank approximately twenty beers and between 5-10 shots of liquor. (ECF No. 71-3 at 16-18); Lawrence Dep. Tr. 14:25-16:3. Henderson was under the age of twenty-one at the time. (ECF No. 71-3 at 16); Lawrence Dep. Tr. 14:15-20.   Around 6:15 p.m., Lawrence, Taylor, and Henderson left the party together to go to a friend's house. (ECF No. 71-3 at 20, 31); Lawrence Dep. Tr. 18:17-24; 29:3-9. Shortly thereafter, while traveling on Piedmont Highway[3] in Taylor's 2000 Lexus four-door sedan, Taylor lost control of his vehicle, causing it to leave the roadway and strike a tree on private property. (ECF No. 71-3 at 14, 22-24); Lawrence Dep. Tr. 12:18-19, 20:24-22:12. Lawrence, who was sitting in the front passenger seat at the time, became paralyzed when Taylor's vehicle struck the tree. (ECF No. 76-2 at 4). The vehicle proceeded to strike two additional trees before coming to a stop. *Id.* Lawrence claims that, immediately before the collision, Henderson,

---

[1] Pursuant to this District's Local Rule 73.02(B)(2)(e), this matter was referred to a magistrate judge due to the Kirks' *pro se* status.

[2] Lawrence refers to Henderson as "Levi" throughout his deposition.

[3] Lawrence refers to the road as "Old Piedmont Highway" in his deposition.

who was sitting behind Taylor, was yelling and grabbing the back of the driver's seat, which Lawrence believes distracted Taylor and caused him to lose control of his vehicle. (ECF No. 71-3 at 25, 44); Lawrence Dep. Tr. 23-3-13; 42:17-20.

Lawrence filed an action in state court against the Kirks, Taylor, and Henderson. (ECF Nos. 1-2; 16-2). Against the Kirks, he brought claims for: (1) general negligence; (2) social host liability for the intentional and/or negligent service of alcohol to Henderson, an individual under the age of twenty-one; and (3) social host liability for the intentional and/or negligent service of alcohol to Taylor. (ECF Nos. 1-2 at 5; 71-2 at 11-19, 21-35). Thereafter, Allied filed a complaint for declaratory judgment in this court, seeking a declaration of its obligations in the state court action under a homeowners insurance policy it issued to Christina Kirk. (ECF No. 1). Lawrence filed a counterclaim seeking a declaration that the Allied policy provides coverage for the claims brought against the Kirks in the underlying action. (ECF No. 16). Now pending before the court are Allied and Lawrence's cross motions for summary judgment. (ECF Nos. 71, 76).

In Allied's summary judgment motion and accompanying memorandum, it argues it is not obligated to provide coverage to the Kirks because Lawrence's claims fall within the homeowners policy's criminal acts exclusion and motor vehicle liability exclusion. (ECF No. 71). In Lawrence's motion and accompanying memorandum, he asserts the policy's criminal acts exclusion and motor vehicle liability exclusion do not exclude coverage and that they are void as against public policy. (ECF No. 76-1 at 12-18). However, should the court disagree, Lawrence asks the court to declare the Kirks are nevertheless liable for some of his damages arising from the

accident that were not expressly excluded by the terms of the policy exclusions. *Id*. at 18-22. Both motions have been fully briefed.[4] (ECF Nos. 75, 84, 93, 98).

The magistrate judge concluded there is no genuine dispute as to any material fact; the motor vehicle liability exclusion and criminal acts exclusion apply as a matter of law; and no coverage exists under the Allied policy. (ECF No. 115). He informed the parties of their right to file objections to the Report. *Id*. at 36. Lawrence filed twenty-eight objections, (ECF No. 120), to which Allied filed a reply, (ECF No. 121). The Kirks did not file any objections to the Report, and the deadline to do so has passed.[5] The matter is ripe for review, and the court finds a hearing is not necessary as the issues have been fully briefed. Local Civ. Rule 7.08 (D.S.C.).

## STANDARD OF REVIEW

The recommendations set forth in the Report have no presumptive weight, and this court remains responsible for making a final determination in this matter. *Elijah v. Dunbar*, 66 F.4th 454, 459 (4th Cir. 2023) (citing *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976)). The court is charged with making a *de novo* determination of those portions of the Report to which a specific objection is made, and the court may accept, reject, modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1). Thus, "[t]o trigger de novo review, an objecting party 'must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court

---

[4] Following the filing of each summary judgment motion, the magistrate judge issued an order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising the Kirks of the summary judgment procedures and consequences for failing to properly respond. (ECF Nos. 73, 78). Nevertheless, the Kirks failed to respond to either motion.

[5] The Clerk's Office mailed the Report to the Kirks' last known address. (ECF No. 118). The Report was not returned to the court as undeliverable; therefore, the Kirks are presumed to have received it.

of the true ground for the objection.'" *Elijah*, 66 F.4th at 460 (quoting *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007)).  However, the court need only review for clear error "those portions which are not objected to—including those portions to which only 'general and conclusory' objections have been made[.]" *Dunlap v. TM Trucking of the Carolinas, LLC*, 288 F. Supp. 3d 654, 662 (D.S.C. 2017); *see also Elijah*, 66 F.4th at 460 (noting that "[i]f a litigant objects only generally, the district court reviews the magistrate's recommendation for clear error only"). Furthermore, "'the court is not obligated to consider new arguments raised by a party for the first time in objections to the magistrate's Report.'" *Floyd v. City of Spartanburg S.C.*, Civ. A. No. 7:20-cv-1305-TMC, 2022 WL 796819, at *9 (D.S.C. Mar. 16, 2022) (quoting *Elliott v. Oldcastle Lawn & Garden, Inc*., No. 2:16-cv-01929-DCN, 2017 WL 1206408, at *3 (D.S.C. Mar. 31, 2017)); *see also Elijah*, 66 F.4th at 460 n. 3 (noting "district court judges are not required to consider new arguments posed in objections to the magistrate's recommendation").

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  Rule 56 mandates entry of summary judgment "'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  *Phillips v. Nlyte Software Am. Ltd*., 615 Fed. App'x 151, 152 (4th Cir. 2015) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

"'In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party.'" *Sellers v. Keller Unlimited LLC*, 388 F. Supp. 3d 646, 649 (D.S.C. 2019) (quoting *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996)). However, "'[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.'" *McKinney v. G4S Gov't Sols., Inc.*, 711 Fed. App'x 130, 134 (4th Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party has the burden of proving that summary judgment is appropriate. *Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Lane & Roderick, Inc.*, 736 Fed. App'x 400, 400 (4th Cir. 2018) (citing *Celotex Corp.*, 477 U.S. at 322–23). Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015).

## DISCUSSION

Under the Declaratory Judgment Act, a district court, in a case or controversy otherwise within its jurisdiction, "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The United States Supreme Court has "repeatedly characterized the Declaratory Judgment Act as 'an enabling Act, which confers discretion on the courts rather than an absolute right upon the litigant.'" *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (quoting *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241 (1952)). Courts have long interpreted the Act's permissive language "to provide discretionary authority to district courts to hear declaratory judgment cases."

*United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 493 (4th Cir. 1998). A court should generally exercise jurisdiction over a declaratory judgment claim "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937)).

This declaratory judgment action concerns a homeowners policy Allied issued to Christina Kirk for coverage between April 12, 2020 to April 12, 2021. (ECF No. 1-1 at 6). Under South Carolina law,[6] "[a]n insurance policy is a contract between the insured and the insurance company, and the terms of the policy are to be construed according to contract law." *Auto Owners Ins. Co. v. Rollison*, 663 S.E.2d 484, 487 (S.C. 2008). As such, insurance policies are subject to the general rules of contract construction, and the court must give the policy language its plain, ordinary, and popular meaning. *Bell v. Progressive Direct Ins. Co.*, 757 S.E.2d 399, 406 (S.C. 2014). The obligation of the insurer under an insurance policy "is defined by the terms of the policy itself and cannot be enlarged by judicial construction." *S.C. Farm Bureau Mut. Ins. Co. v. Wilson*, 544 S.E.2d 848, 850 (S.C. Ct. App. 2001). Indeed, it is well settled that "courts have no authority to torture the meaning of policy language to extend or defeat coverage that was never intended by the parties." *Diamond State Ins. Co. v. Homestead Indus., Ins.*, 456 S.E.2d 912, 915 (S.C. 1995) (citing *Torrington Co. v. Aetna Cas. & Sur. Co.*, 216 S.E.2d 547, 550 (S.C. 1975)). *See also Sphere Drake Ins. v. Litchfield*, 438 S.E.2d 275, 277 (S.C. Ct. App. 1993) (providing "[w]hile a policy should be liberally construed in favor of coverage and against exclusion, courts are not permitted to torture the ordinary meaning of language to extend coverage expressly excluded by the terms

---

[6] A federal district court sitting in diversity must apply the substantive law of the state in which the court sits, *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 79 (1938), and in this case, the parties do not dispute that South Carolina law applies.

of the policy"); *Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Parker*, 320 S.E.2d 458, 461 (S.C. Ct. App. 1984) (recognizing "insurers have the right to limit their liability and to impose whatever conditions they desire upon an insured, provided they are not in contravention of some statutory inhibition or public policy"). Further, "[w]here the terms of a contract are clear and unambiguous as a matter of law, its construction is for the court." *Black v. Freeman*, 262 S.E.2d 879, 880 (S.C. 1980).

The crux of this case is whether the Kirks' homeowners insurance policy with Allied provides coverage for any potential liability related to the claims asserted by Lawrence in the underlying state court action. The pertinent portions of the policy state:

> **SECTION II—LIABILITY COVERAGES**
> **A. Coverage E—Personal Liability**
> *If a claim is made or a suit is brought against an "insured" for damages due to an "occurrence"*[7] resulting from negligent personal acts or negligence arising out of the ownership, maintenance or use of real or personal property, *we will*:
> 1. *Pay up to our limit of liability for the damages for which an "insured" is legally liable*. Damages include prejudgment interest awarded against an "insured"; and
> 2. Provide a defense at our expense by counsel of our choice. We may investigate and settle any claim or suit. Our duty to settle or defend ends when our limit of liability for the "occurrence" has been exhausted by payment of a judgment or settlement.
>
> **B. Coverage F—Medical Payments to Others**
> We will pay the reasonable and necessary medical and funeral expenses that are incurred within three years from the date of an accident causing "bodily injury". This coverage does not apply to you or regular residents of your household except "residence employees". . . .
>
> **SECTION II—EXCLUSIONS**
> **A. Motor Vehicle Liability**[8]

---

[7] The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in . . . 'bodily injury'; or . . . 'property damage'." (ECF No. 1-1 at 13).

[8] The policy defines "motor vehicle liability" as "liability for 'bodily injury' or 'property damage' arising out of the: (1) ownership of such vehicle . . . by an 'insured'; (2) maintenance, occupancy, operation, use, loading or unloading of such vehicle or craft by any person; (3) entrustment of such vehicle . . . by an 'insured' to any person; (4) failure to supervise or negligent supervision of any

1. Coverages **E** and **F** do not apply to any "motor vehicle liability" if, at the time and place of an "occurrence", the involved "motor vehicle"[9]:

   a. Is registered for use on public roads or property;
   b. *Is not registered for use on public roads or property, but such registration is required by a law, or regulation issued by a government agency, for it to be used at the place of the "occurrence"*, or
   c. is being:
      (1) Operated in . . . a speed contest or other competition;
      (2) rented to others;
      (3) Used to carry persons or cargo for a fee or compensation; or
      (4) Used for any 'business' purpose except for a motorized golf cart while on a golfing facility."

2. If Exclusion A.1. does not apply, there is still no coverage for "motor vehicle liability", unless the "motor vehicle" is:

   a. In dead storage on an 'insured location', which means physically prepared for long-term storage;
   b. *Used solely to service a residence*;
   c. *Designed to assist the handicapped and, at the time of an 'occurrence", it is*:
      (1) *Being used to assist a handicapped person*; or
      (2) Parked on an "insured location";
   d. *Designed for recreational use off public roads and*:
      (1) *Not owned by an "insured"*; or
      (2) Owned by an "insured" provided the "occurrence" takes place:
         (a) On an "insured location" as defined [herein]; or
         (b) Off an "insured location" and the "motor vehicle" is:
            (i) Designed as a toy vehicle for use by children under seven years of age;
            (ii) Powered by one or more batteries; and
            (iii) Not built or modified after manufacture to exceed a speed of five miles per hour on level ground; or
   e. A motorized golf cart . . . .

(ECF No. 1-1 at 35–36).

---

person involving such vehicle . . . by an 'insured': or (5) vicarious liability, whether or not imposed by law, for the actions of a child or minor involving such vehicle . . . ." (ECF No. 1-1 at 11).

[9] Motor vehicle is defined under the policy as "[a] self-propelled land or amphibious vehicle". (ECF No. 1-1 at 13).

In his Report, the magistrate judge determined that the motor vehicle liability exclusion applied and that, therefore, there is no coverage under the policy.[10] (ECF No. 115). Lawrence filed a litany of objections, many of which state general disagreement with the magistrate judge's ultimate conclusions in his Report. (ECF No. 120). To the extent such objections generally disagree with the Report without providing an articulated reason for such disagreement, such objections are not specific and do not require *de novo* review. Furthermore, on the first page of his objections, Lawrence seeks to "incorporate by reference" his memorandum in support of his own motion for summary judgment, (ECF No. 76-1); his response in opposition to Allied's motion for summary judgment, (ECF No. 75); and his reply in support of his own motion for summary judgment, (ECF No. 98). (ECF No. 120 at 1). This is insufficient to create a specific objection to the Report. For one, such filings were made *prior* to the issuance of the Report, so by its very nature, any assertion set forth therein cannot be in *response* to any argument or conclusion in the Report. Additionally, it is not the responsibility of the court to generate or piece together arguments for counsel based on a global citation to the previous filings. However, the court does glean several specific objections to the Report and will address such arguments in turn.

## I.     Objections 6 – 19 : Motor Vehicle Exclusion[11]

Lawrence spends a considerable portion of his objections focused on the various components of the motor vehicle exclusion and why he believes the magistrate judge erred in

---

[10] In his Report, the magistrate judge also determined that coverage is excluded based on the criminal acts exclusion in the policy. (ECF No. 115). Because this court agrees with the magistrate judge that the motor vehicle liability exclusion applies, the court need not reach the issue of the applicability of the criminal acts exclusion.

[11] Because objections 6-19 deal with whether the motor vehicle exception applies in general, the court will address these issues first before addressing the remaining objections.

determining that such exclusion applies and negates coverage in this case. (ECF No. 120 at 7–22).

As such, the court will review the motor vehicle exclusion and its applicability *de novo*.

Section II of the policy states, in pertinent part:

> Coverages E and F do not apply to any "motor vehicle liability" if, at the
> time and place of an "occurrence", the involved motor vehicle . . .
> (a) Is registered for use on public roads or property; [or]
> (b) Is not registered for use on public roads or property, but such registration
> is required by a law, or regulation issued by a government agency, for it to
> be used at the place of the "occurrence" . . . .

(ECF No. 1-1 at 35). "Coverages E and F" are the *only* possibilities for coverage under Section II:

Liability Coverages, with Coverage E being for "personal liability" and Coverage F being for

"Medical Payments to Others."[12] *Id.*  The policy defines "motor vehicle liability" as:

> liability for "bodily injury" or "property damage" arising out of the: (1)
> ownership of such vehicle . . . by an "insured"; (2) maintenance, occupancy,
> operation, use, loading or unloading of such vehicle or craft by any person;
> (3) entrustment of such vehicle . . . by an "insured" to any person; (4) failure
> to supervise or negligent supervision of any person involving such vehicle
> . . . by an "insured": or (5) vicarious liability, whether or not imposed by
> law, for the actions of a child or minor involving such vehicle . . . .

*Id.* at 11.  "Motor vehicle" is defined under the policy as "[a] self-propelled land or amphibious

vehicle". *Id.* at 13. There is no question that Taylor's Lexus is a motor vehicle as defined in the

policy.

In order to determine whether such exclusion applies, the court must first define the

"occurrence" at issue in this case.  The policy defines "occurrence" as "an accident, including

continuous or repeated exposure to substantially the same general harmful conditions, which

results, during the policy period, in . . . 'bodily injury'; or . . . 'property damage'." *Id.* Lawrence

argues that the place of the "occurrence" was "on private property when the vehicle hit a tree on

---

[12] Coverages A – D are listed in Section I of the policy and deal with coverage as to the insured home itself and the contents therein. (ECF No. 1-1 at 14–35).

private property" because that is the instance in which he claims he suffered damages. (ECF No. 75 at 16). However, this argument is inconsistent with his own recitation of how the car accident occurs, and it is incompatible with both the policy language and South Carolina law. Notably, the policy itself does not define the word "accident" as it is used in the definition of "occurrence." However, the Supreme Court of South Carolina has "found that in the absence of a prescribed definition in the policy, the definition of 'accident' is 'an unexpected happening or event, which occurs by chance and usually suddenly, with harmful result, not intended or designed by the person suffering the harm or hurt.'" *Auto Owners Ins. Co., Inc. v. Newman*, 684 S.E.2d 541, 543 (S.C. 2009) (quoting *Green v. United Ins. Co. of Am.*, 174 S.E.2d 400, 402 (1970)). Furthermore, "[t]he temporal continuum of an accident necessarily includes more than the point in time of initial impact. It also includes the events immediately surrounding the initial impact and the point in time that the last injury was inflicted." *South Carolina Farm Bureau Mut. Ins. Co. v. Kennedy*, 730 S.E.2d 862, 865 (S.C. 2012); *see also Auto-Owners Ins. Co. v. Rhodes*, 748 S.E.2d 781, 791 (S.C. 2013) (discussing an "accident" as including the "continuum" of the causal events surrounding the harm); *Johnson v. Hunter*, 688 S.E.2d 593, 596 (S.C. Ct. App. 2010) (concluding that only one "accident" occurred when the plaintiff was struck once and then, prior to being able to exit his vehicle, he was struck by a second vehicle).

In his amended complaint, Lawrence describes the scene that Taylor "drove his vehicle at a high rate of speed, lost control of the vehicle, crossed over the center line, went off the roadway, and struck a tree located on private property." (ECF No. 16-2 at 8). Accordingly, prior to the car physically striking the tree, according to Lawrence, the driver "lost control[,]" crossed to the wrong side of the roadway, and went off the roadway. After exiting the roadway, the car struck three trees, the first impact being the one that gravely injured Lawrence. *Id.* In light of how South

Carolina courts view an "accident" when undefined in the policy, the "accident" and, therefore the "occurrence" here began on Piedmont Road when Taylor lost control of his vehicle and included all of the events that followed until the vehicle hit the final tree and stopped moving.

Lawrence admits that Taylor's vehicle was not registered at the time of the accident. (ECF No. 75 at 14). Pursuant to South Carolina law, "[e]very motor vehicle . . . driven operated or moved upon a highway in this State shall be registered and licensed . . . ." S.C. Code Ann. § 56-3-110. However, the statute exempts from registration "a vehicle driven, operated, or moved upon a highway pursuant to the provisions of this chapter relating to nonresidents or *under temporary permits* issued by the department as authorized." S.C. Code Ann. § 56-3-120(1) (emphasis added). However, Lawrence contends that such registration was not required because Taylor had only owned his vehicle for one week prior to the accident, and, therefore, he had a "grace period" wherein he did not yet need to register his vehicle. *Id.* at 15. The "grace period" on which Lawrence relies is the forty-five day period for which an individual *may* purchase or obtain a temporary license plate prior to permanently registering a vehicle in this state. *See* S.C. Code Ann. § 56-3-210.[13]

However, Lawrence's reading of the statute allowing for a "grace period" before full registration is required is misplaced. The statute allows for a person to obtain a temporary license plate before fully registering the vehicle as required in § 56-3-110, but such temporary plate must be replaced within "forty-five days of acquiring the vehicle." S.C. Code Ann. § 56-3-210(H). The

---

[13] This statute was modified with an effective date of January 18, 2024. The Court applies the statute in effect at the time of the accident. *See Stephens v. Draffin*, 327 S.C. 1, 5, 488 S.E.2d 307, 309 (1997) ("In South Carolina, the law in effect at the time the cause of action accrued controls the parties' legal relationships and rights."); *see also Cooper v. Hawkins*, C/A No. 6:08-cv-1602-GRA, 2008 WL 2563148, at *1 (D.S.C. June 23, 2008). Accordingly, the court will rely on the statute that was in place at the time of the accident, which was effective from May 15, 2019 to January 17, 2024.

statute specifically states that "[a] person who newly acquires a vehicle . . . that is required to be registered under this chapter, and that is not properly registered and licensed, *before operating the vehicle on the state's highways during the forty-five day period contained in this section*" must do one of these things: (1) transfer a license plate from another vehicle; (2) purchase a new license plate and registration; (3) purchase a temporary plate from specified entities; or (4) obtain a temporary plate from a car dealer. S.C. Code Ann. § 56-3-210 (emphasis added). Lawrence concedes that Taylor did none of these things. (ECF No. 120 at 8–9). However, Lawrence argues that Taylor's failure to obtain any temporary plate did not strip him of the forty-five day "grace period" for having to comply with § 56-3-110. *Id.* However, that is exactly what that means. A clear reading of § 56-3-120, the statute regarding exemption from registration and licensing as set forth in § 56-3-120, defines the specific, detailed instances in which compliance with § 56-3-110 is not required. That language provides, in pertinent part, that a vehicle is exempt from such compliance if it is "driven, operated, or moved upon a highway pursuant to the provisions of this chapter . . . under temporary permits issued by the department as authorized." S.C. Code Ann. § 56-3-120(1). There is no question that Taylor drove his vehicle on a highway. There is no question that Taylor did not comply with § 56-3-110. There is *also* no question that Taylor *did not have a temporary permit issued by the department*, and, therefore, he *did not fall within this exemption.* As such, Taylor's vehicle was required to be registered to be on the public highway on the date of the occurrence.

Accordingly, the policy clearly carves out any coverage for "motor vehicle liability" related to this incident. Turning to the definition of "motor vehicle liability," the policy defines such, in pertinent part, as

14

liability for "bodily injury" or "property damage" arising out of. . . (2) maintenance, occupancy, operation, use, loading or unloading of such vehicle or craft by any person.

(ECF No. 1-1 at 11). The occurrence in question, the automobile accident, and the resulting damages undoubtedly arose out of the occupancy and operation of Taylor's vehicle. As such, the motor vehicle liability exclusion set forth in Section II, A.1. applies.

The magistrate judge went a step further and considered the additional potential applications of motor vehicle liability set forth in Section II, A.2. (ECF No. 115 at 22–23). However, because the court has determined the occurrence in this case falls squarely within the exclusion at Section II, A.1., the court need not reach the additional possibilities for extending motor vehicle liability exclusion in Section II, A.2. *See* (ECF No. 1-1 at 36) (stating "[i]f Exclusion A.1 *does not apply,* there is still no coverage for 'motor vehicle liability' unless the 'motor vehicle'" meets one of the listed conditions in Section II, A.2. (emphasis added)). In other words, if the exclusion as to Section II, A.1 *does* apply, it does not matter if the vehicle meets one of the conditions set forth in Section II, A.2.[14]

## II.     Objections 1, 2 and 5

Having determined that the motor vehicle liability exclusion applies, the court now turns to Lawrence's other objections. As for Lawrence's first objection that the Report failed to recommend a finding for coverage because Section II, Subpart A of the policy states that Allied will "pay up to the limit of liability for damages for which an insured is legally liable[,]" (ECF No. 120 at 2), the court finds this objection to be wholly without merit. Lawrence contends that the Report's failure to recognize the "scope of the coverage is one reason the Report incorrectly

---

[14] Accordingly, the court will not specifically address Lawrence's objections as to the applicability of the conditions listed in Section II, A.2., as they do not affect the outcome of this court's ruling.

concludes" that the motor vehicle exclusion applies. *Id.* Essentially, it appears Lawrence argues that since the "promise" to pay is included in the policy, that must control. However, what Lawrence fails to note is that this Section describes what is covered *absent an exclusion* as set forth within the policy. The motor vehicle exclusion, which the magistrate judge concluded applied in this case, specifically states at the outset that "Coverages E and F do not apply to any 'motor vehicle liability'" if the conditions listed within the exclusion are met. (ECF No. 1-1 at 35).

Furthermore, as the magistrate judge correctly indicated, (ECF No. 115 at 32–35), South Carolina courts have determined that when an insurance policy excludes "bodily injury" or "property damage" arising out of an automobile accident, as it did here within the "motor vehicle liability exclusion" it is a "a clear indication that the exclusion applies to the *occurrence or event*, and not the *type* of damages." *MGC Mgmt. of Charleston, Inc. v. Kinghorn Ins. Agency*, 520 S.E. 820, 824 (S.C. Ct. App. 1999) (emphasis added).[15]  Lawrence takes issue with this in both his second and fifth objections, asserting that the Report failed to recommend a finding that the motor vehicle liability exclusion[16] "only exclude[d] liability for 'bodily injury' or 'property damage' as those terms are defined in the policy." (ECF No. 120 at 2). Lawrence argues that the Report "misconstrues the policy language" and the "legal issues discussed" in *MGC.* The court disagrees with Lawrence's reading of *MGC* and the unambiguous language of the policy.

In *MGC*, the South Carolina Court of Appeals reviewed a commercial general liability policy and determined that the automobile exclusion provision applied. *MGC*, 520 S.E. at 823.

---

[15] The magistrate judge did a thorough analysis of this case in his Report, and the court agrees with the analysis therein.

[16] This objection also references the criminal acts exclusion in the policy. However, as noted above, because the court finds that the motor vehicle liability exclusion excludes coverage under the policy and is outcome determinative, the court need not reach the issue on whether the criminal acts exclusion also applies.

Accordingly, the court stated that "[w]hile damages because of bodily injury are normally recoverable under provision 1(c) of the policy, such damages are clearly excluded when they arise out of the use of an automobile." *Id.* The court further noted that "[t]he distinction between 'bodily injury' damages and 'personal injury' damages is irrelevant, for it is the occurrence itself that is excluded from the coverage, not the type of damages. Thus, any damages flowing from the non-covered occurrence, be they bodily or personal injuries, are not covered." *Id.* The court also dropped a footnote in the opinion to clarify that "[h]ad the exclusion used the term 'bodily injury damages' instead of merely 'bodily injury'" the argument on limiting the scope of which damages were excluded would have been "more compelling." *Id.* at 824 n.1.

Turning to the policy in this case, the court agrees with the magistrate judge that the language of the motor vehicle exclusion is substantially similar to the language used in *MGC.* The policy here defines "motor vehicle liability" in terms of "*liability for 'bodily injury' or 'property damage.'*" (ECF No. 1-1 at 11) (emphasis added). It does not carve out a specific sort of *damages* that would be excluded. As the language is substantially similar, the court finds the analysis in *MGC* regarding the applicability of the exclusion of coverage to the *occurrence* is on point and applicable to the exclusions in the Allied policy here. Accordingly, the court agrees with the magistrate judge that Lawrence's purported damages, which all arise from the excluded occurrence, are also excluded from coverage. Accordingly, these objections are overruled.

### III.    Objections 3 and 4

Oddly, Lawrence's Objections 3 and 4 are inconsistent with one another and give the court pause.[17] At Objection 3, Lawrence claims that because the policy language is "clear and

---

[17] For the second time in this case, the court finds it necessary to remind Lawrence's counsel of his obligations under Rule 11 of the Federal Rules of Civil Procedure. Additionally, Rule 3.1 of the South Carolina Rules of Professional Conduct provides that "[a] lawyer shall not bring or

unambiguous" the Report erred in not following the "general rules of contract construction" in determining that the motor vehicle exclusion excludes an act or event from coverage when it should "only exclude liability for bodily injury and property damages. . . ." (ECF No. 120 at 4). As noted above in response to Objection 2, this is an incorrect reading of the policy language, as such exclusion excludes *coverage* for various forms of liability. Interestingly, at Objection 4, Lawrence takes the opposite approach and claims that the "policy language is unclear and ambiguous[,]" so it should be "construed against the insurer" and in his favor. *Id.* at 5. He argues that the court should conclude that non-bodily injuries and non-property damages are covered under the policy, then Lawrence will "have to prove his case and damages to a state court jury consistent with the declarations of this court." *Id.* at 6. Lawrence will have to do that regardless of what this court's ruling is in relation to *coverage.* Furthermore, as discussed above, this is a misreading of the policy language, which is clear and unambiguous.

---

defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law." Rule 3.1, RPC, Rule 407, SCACR. The court recognizes that counsel has an obligation to zealously represent the interests of the client. However, as an officer of the court, counsel also has a duty to not present claims and legal contentions that are frivolous. As an example, two of the 28 Objections to the Report filed by Lawrence, Objections 3 and 4, directly contradict one another at the very core of their arguments. This is not an instance of such arguments being presented in an alternative basis with a reasonable approach as to why both are presented. Instead, it reads to the court as if counsel is attempting to throw a proverbial pot of spaghetti full of arguments at the bench without any specific rationale or legal basis in support, hoping that one noodle of an argument will stick. Such tactic distracts from counsel's nonfrivolous arguments and generates concern as to counsel's candor toward the court. Rule 3.3 of the South Carolina Rules of Professional Conduct imposes a duty of candor toward the tribunal in a pending action and notes that the failure to exhibit such candor when presenting factual and legal arguments undermines the integrity of the judicial process. Rule 3.3, RPC, Rule 407, SCACR. Further, the presentment of frivolous arguments without basis in law or fact imposes unnecessary costs and expenses by opposing parties who must rebut the same, as well as the expenditure of scarce judicial resources. Lawrence's counsel would be well advised to familiarize himself with the referenced rules and professional obligations prior to his next appearance in this court.

Furthermore, this case is before the court as a declaratory judgment action – wherein the insurance provider, Allied, seeks a declaration as to whether it has a duty to defend its insured, the Kirks, in the underlying suit and whether it must indemnify any damages ordered against Kirk. This is not a case regarding *legal liability.* An insurance contract cannot create or destroy legal liability of the insured in relation to third parties. It appears that Lawrence may be conflating the issues of legal liability, which is at issue in the state court action, and insurance coverage, which is the issue before this court. As such, these objections are overruled.

## IV.      Objections 27 – 28[18] : Endorsement H 02 04 07 16

In his final objections, Lawrence contends that the magistrate judge erred in not finding that Endorsement H 02 04 07 16 (the "Endorsement") removed the "motor vehicle liability" exclusion from the policy. (ECF No. 120 at 27). He also argues that such Endorsement and the policy in general are unclear and ambiguous, and, therefore, they should be construed in favor of coverage. *Id.* at 28–29.  The court disagrees.

The Endorsement at issue, which concerns "Personal Injury Coverage," specifically states that "[c]overage is subject to *all terms and conditions of the policy except as changed by this endorsement.*" (ECF No. 1-1 at 61) (emphasis added). The Endorsement defines "Personal Injury" as meaning "injury arising out of one or more" of various offenses "if the offense was committed during the policy period." *Id.* Those offenses include various acts such as false arrest, malicious prosecution, wrongful eviction, slander, and libel. *Id.* Most notably, these various offenses *do not include* in any way, shape, or form, any mention of a motor vehicle or anything of accidental

---

[18] Objections 20 – 26 relate to the criminal acts exclusion in the policy. As noted several times herein, because the court's ruling on the issue of the motor vehicle liability exclusion is outcome-determinative in this case, the court declines to reach the issue of the criminal acts exclusion and, therefore, need not consider the objections to whether or not such exclusion applies.

nature. While Lawrence is correct that the Section II – Exclusions are "replaced" with various language in the Endorsement, he fails to point out that such replacement is only "*[w]ith respect to the coverage provided by this endorsement*" – i.e.- as to personal injury coverage as defined therein. *Id.* This language is clear and unambiguous. Accordingly, his argument that the Endorsement effectively negates the exclusions listed in Section II as to motor vehicle liability, which has no bearing on nor any relation to *personal injury* as defined in the Endorsement, is wholly without merit. Therefore, these objections are overruled.

## CONCLUSION

For the reasons stated, the court finds that under the clear language of the policy, coverage is excluded. The court **ADOPTS IN PART** the Report, (ECF No. 115). Specifically, the court agrees with the magistrate judge that the motor vehicle liability exclusion precludes coverage and, as such, Allied is entitled to summary judgment. Accordingly, the court **GRANTS** Allied's motion for summary judgment, (ECF No. 71), and **DENIES** Lawrence's motion for summary judgment, (ECF No. 76). It is hereby **DECLARED** that Allied does not have a duty either to provide the Kirks with a defense in the underlying state court action, which has been brought by Lawrence, nor to indemnify the Kirks for any judgment in the underlying state court action.[19]

**IT IS SO ORDERED.**

s/Timothy M. Cain
Chief United States District Judge

March 25, 2025
Anderson, South Carolina

---

[19] While the court is sympathetic to Lawrence's arguments throughout this case regarding the burden he faces absent a finding of coverage, several of these arguments suggest that the coverage determination in this case affects whether or not Lawrence has a cause of action against the Kirks. As noted several times herein, the only issue before *this court* is whether the Kirks' homeowners insurance policy provides coverage under the particular facts and circumstances presented. The court has determined it does not. This order has no effect, and the court makes no opinion, as to any *legal liability* issues at play between Lawrence and the Kirks.

## NOTICE OF RIGHT TO APPEAL

The parties are hereby notified of the right to appeal this order pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.